The Chancellor.
The bill of complaint in this cause was filed by a lessee to enforce against the lessor the specific performance of a contract for the renewal of a lease. The injunction issued to restrain proceedings at law, and to protect the lessee in the possession of the premises until the hearing and decision of the cause.
The injunction is merely ancillary to the main design of the bill, which is to obtain a decree for the specific performance of the agreement. The defendant, having answered, seeks a dissolution of the injunction on the ground of want of equity in the bill, as well as on the ground that the equity is denied by the answer.
'The first point for consideration,is, whether upon the case made by the bill, irrespective of the facts stated in the answer, the complainant is entitled to relief. If he is not, it is clear that the injunction ought not to be continued.
.By the terms, of the agreement between the parties, the complainant leased of the defendant the. United States Hotel at Atlantic City, from the twenty-eighth day of January, *17 1860, to the first day of January, 1861, with the furniture of the hotel, for $8000 rent. The agreement contained the further stipulation, that if the complainant should keep the hotel in a proper and efficient manner, he should have the privilege of re-leasing the same (exclusive of the furniture) upon the same terms, except that the rent should be $7000 per annum, and that the complainant, if he exercised such privilege, should purchase the furniture at the cost price thereof, less two hundred and fifty dollars, and that the times or credits to be given by, the. defendant to the complainant should be the subject of arrangement between the parties.
In the defendant’s copy of the agreement, as appended to his answer, the stipulation is slightly varied, the clause being that the terms or credits, instead of times or credits, should be the subject of arrangement between the parties. I do not regard the clauses as essentially different. The expression is not terms and credits, but terms or credits. The subject of sale and the price to be paid were agreed upon; the only subject of future arrangement was the terms or credits to be given. The terms alluded to were manifestly the credits to be given; no other term could fairly be included within the phraseology. The affidavit of the scrivener moreover shows that this was the agreement in fact. But aside from this question of construction, and treating the evidence of the scrivener as incompetent while considering the equity of the complainant’s bill, the agreement, as there set forth, must be treated as containing the true agreement of the parties.
FTo specific performance of a contract can be decreed in equity unless the contract be actually concluded and be certain in all its parts. If the matter still rests in treaty, or if the agreement in any material particular be uncertain or undefined, equity will not interfere. Fry on Spec. Per., § 164, 203.
“ I lay it down as a general proposition,” said Lord Rosslyn, “to which I know no limitation, that all agreements, in *18 order to be executed in this court, must be certain and defined.” Lord Walpole v. Lord Orford, 3 Ves. 420.
The same doctrine is uniformly recognised in all the cases, English and American.
The present agreement was concluded, and is certain as to all its terms, except as to the credits which were to be given for the price of the furniture. That, by the express terms of the contract, was to be the subject of future arrangement between the parties. In this particular the contract was not concluded, or if concluded by the execution of the instrument, the. term was not certain or defined. Is this uncertainty or want of conclusiveness in the agreement of such -character and materiality as to forbid the interference of the court in order to enforce a specific performance ?
The price to be paid for the furniture was about $18,000. Of this sum the complainant proposed to pay $3000 in cash, and the residue in four equal instalments, at one, two, three, and four years. The defendant, as his ultimatum, on the 7th of December, demanded $9000 in cash, and the balance in six, nine, and twelve months, with interest. These terms, as finally proposed by the defendant, the complainant insists are unreasonable and unjust, and not according to the true intent and meaning of the agreement. He was therefore unwilling to accede to them; and the defendant refusing to offer more favorable terms, the parties, as the bill charges, have been and are unable to come to any such agreement or arrangement as provided for in the article.
The court is therefore asked to decree a specific performance of the agreements, and that the defendant, among other things, shall sell and transfer the said furniture to the complainant for the ascertained price, “for such times and credits of payment as this court shall deem reasonable and just" according to said agreement. Is such decree within the power of this court ?
By the terms of the contract, as executed, it is stipulated that the times or credits to be given should be the subject of arrangement, between the parties. The Gourt are now asked *19 to carry that contract into execution, and, in so doing, to direct that the times and ci’edits shall be such, not as the parties shall agree upon, but such as this court shall deem reasonable and just. Now, upon the very face of the transaction, is it not apparent that this is asking the court not to enforce the specific performance of an agreement made by the parties, but to make an agreement for them ? Is it not in direct violation of the agreement? The times or credits were stipulated to be such as the parties themselves should assent to. Each party reserved to himself the right of control over that matter. Neither consented to trust it to the judgment of this court or of any other tribunal. Suppose the stipulation had been that the furniture should be taken at such price as the parties might agree upon. If the parties could not or would not agree, could this court enforce the performance of the contract for su,ch price as the court might deem reasonable ? Is a contract for sale at a fixed or contract price tantamount to a contract for sale upon a quantum valebant? A price stipulated by the parties may be, and often is deemed competent evidence of what the goods are worth, but the fair value of the goods never has been, and never can be evidence of a contract price. Or suppose, again, that the contract had been that the lease should be renewed upon such terms as the parties should thereafter agree upon. If the parties could not agree as to the terms, could a court of equity be called upon to enforce the renewal of the lease upon such terms as the court might deem reasonable and just ? Would not this principle, if carried out, enable this court to enforce the performance of any contract, however imperfect in its terms ? Would it not rather enable the court to make contracts for the parties, and compel them to submit to terms to which they never assented ?
No case, I think, can be found, certainly the researches of counsel have furnished none, which go the length of supporting the claim of the complainant’s biR.
In Graham v. Call’s ex’r, 5 Munford 396, upon an agreement for the sale of land, subject to a condition that the *20 :price should .afterwards be ascertained by the parties, • the •court held the agreement too incomplete .and uncertain to .be carried into execution by a court of equity.
So where a valuation is, by the terms of the agreement, to be made by arbitrators named by the parties, or by an umpire to be selected by them, and the arbitrators will not act, or cannot agree either as to the valuation or the umpire, the ■court will not interfere to appoint an umpire or to make a valuation. Milnes v. Grey, 14 Vesey 400; Blundell v. Brettargh, 17 Vesey 232; Gourlay v. The Duke of Somerset, 1 V. & B. 68; Agar v. Macklew, 2 Sim. & St. 418; Morgan v. Milman, 17 Eng. Law & Eq. 203; Tobey v. The County of Bristol, Story 200; Smallwood v. Mercer, 1 Washington 374; Baker v. Glass, 6 Munf. 212; Wallingford v. Wallingford, 6 Mar. & J. 490.
In Gregory v. Mighell, 18 Vesey 328, the court interfered -on the ground that the agreement was in part performed. The lease was for twenty-one years; the rent was to be ascertained by indifferent persons, to be chosen by the parties. The tenant occupied the premises, but the rent was not ascertained — some rent, therefore, must be paid. The amount must, of necessity, be fixed, and the court therefore directed •that it should be ascertained by'a master. When the arbitrators are not named, but it is simply agreed that the property shall be taken at an appraisement or at a fair valuation, the court will appoint appraisers, or direct the value to be ascertained by a master. In such case the persons by whom the valuation is to be made is not of the essence of the agreement, and the aotion of tho oourt is in strict accordance with the agreement. Gaskarth v. Lowther, 12 Vesey 106; Weeks v. Davis, 3 Mer. 507; City of Providence v. St. John’s Lodge, 2 Rhode Lsland 46; Dyke v. Green, 4 Rhode Lsland 285.
The furthest that any court has gone is to hold that they may ascertain' the 'value when, by the terms of the contract, the property was to be taken at a valuation by valuers to be selected by the parties, the essence' of the .stipulation not *21 appearing to be the mode in which the valuation should be made. Jackson v. Jackson, 19 Eng. L. & Eq. 545. This is conceded to be a departure from the general principle, and to be justified only on the ground of apparent necessity.
In the case of Morgan v. Milman, decided in 1853, before the lords justices of the Court of Appeal, Lord Cranworth said, “all the authorities enunciate the proposition in the strongest language, that when the parties have stipulated that the price shall be ascertained by arbitration, if the arbitration does not proceed, and the price be so ascertained according to the mode in which the parties have stipulated, the court has no right to make a different contract than the parties have entered into, and ascertain the price for them in some different mode.”
The cases, with few exceptions, will be found to recognise the distinction adopted in the earlier case of Milnes v. Grey. The cases principally relied on by the complainant’s counsel recognise the distinction most clearly. Thus, in The City of Providence v. St. John’s Lodge (2 Rh. Island 46) the property was to be retaken by the city, upon paying to the defendants the value thereof, as the same should he appraised. The mode of appraisement or valuation was not specified in the agreement. A specific performance was decreed, the court holding that the agreement was tantamount to sell at a valuation, or a fair valuation, and that appraisers might be appointed for that purpose by the court. There the appointment of appraisers was not in conflict with the agreement. But the Chief Justice, in delivering the opinion of the court, said — “ It is undoubtedly true that a court of equity will not enforce a contract of sale where the price is to be fixed by the parties, or by arbitrators to be chosen by the parties, and for the plain reason, that the contract sought to be enforced is incomplete in an essential particular, and the court have no power to substitute themselves or a master to fix the price in the place of the parties or of arbitrators to be chosen by the parties. This would be not to enforce an existing contract of the parties, but to make one for them.” — “ We *22 think the parties have agreed to an appraisement, and whether made by appraisers chosen by themselves, or appointed by the court,-it is equally'an appraisement in the sense -of the contract,”
Here the appraiser was appointed by the court, upon the ground that it was strictly in accordance with the agreement. But in the case novr nnder consideration the court are asked to fix the times or credits to b,e given in direct conflict with the terms of the agreement.
The credits to. be giyen in this case are not such a subor.dinate matter that the court can treat it as not of the essence of the contract, The fact, that the parties have split upon this very point, and this is in reality the great matter of ■ controversy, shows that it is, in their estimation, no matter 'of subordinate consideration. The whole frame of the bill .shows, indeed, that the-complainant deemed it a matter vital to his interests, The wide difference between their respective proposals shows, moreover-, that there is a broad field for ■controversy and for honest diversity of opinion.
Nor do I find any question of fraud in the case, or such part performance of the contract as will justify the court in taking the case out qf the general rule.
It was said, upon the argument, that npon 9, pice question, the injunction should be held to a hearing, or the defendant driven to a demurrer.
. If I had any real doubt upon the question, I should acquiesce in that suggestion, the more especially as, upon the evidence now before me, there is an apparent disposition of the defendant to escape the fair operation qf his contract. ■But I really have no doubt, and cannot 'sustain the injunction, the more especially as the defendant must necessarily -be prejudiced by so doing.

 These cases were omitted ill the regular reports of the cases decided at those terms in Mr. Beasley’s second volume.